## Case No. 14,937.

### UNITED STATES v. DE HARO.

[1 Cal. Law J. 195.]

District Court, N. D. California. 1862.

MEXICAN LAND GRANTS—LOCATION OF BOUNDARIES —DECREE FOUNDED ON PAROL EVIDENCE—INTERPRETATION.

[The location of a lot of 100 varas, the claim for which was confirmed by the court, was made solely upon the testimony of a witness who described one of its boundaries as adjoining the "Casa Principal," of an old mission. This language was carried verbatim into the decree. On objections to a survey made under the decree, it appeared that certain outhouses belonging to the mission had been situated on that side of it, and that the words "Casa Principal" might have been used to indicate either that the lot extended to the ruins of these buildings, or beyond them (and including them) to the mission church. In fact, the lot actually occupied by the grantee and built upon by him extended only to the ruins of the outbuildings. Held, that the decree would be construed so as to require the boundary to be located at the latter place.]

Survey of grant at Mission Dolores. Rejected [by the board] December 12, 1862. [Upon appeal to the district court, the decree was reversed, and the grant confirmed. Case unreported. This last decision was affirmed by the supreme court. 22 How. (63 U. S.) 293. It is now heard upon the question of the location of the grant.]

HOFFMAN, District Judge. The claim in this case, which is for a 100-vara lot at the Mission Dolores, was rejected by the board for want of any description of the premises, either in the petition or grant, whereby they could be identified. The cause having been appealed to this court, a witness was produced who testified to the location of the lot granted to De Haro. He describes it as situate on Dolores street and adjoining the "Casa Prin-

cipal" of the old mission, on the north side of said house, and on the west side of Dolores street. There is nothing intervening between said lot and the "Casa Principal." De Haro built a house on it, and fenced it in. On this testimony the claim was confirmed. In the decree the description given by the witness is verbatim adopted, and this decree has been affirmed by the supreme court. [22 How. (63 U. S.) 293.]

As to the general location of the lot there is no dispute. In his petition De Haro asks for a lot 100 varas square "in that occupied by the ruins of the houses which formerly belonged to the escolta of the mission." The site of these houses is admitted, and that built by De Haro still exists. It is objected, however, that the southern boundary line of the lot has been run some 75 feet too far to the south, while the claimants contend that this location is necessarily required by the call in the decree for the "Casa Principal." It is to be observed that this call is derived neither from the petition nor the grant, but solely from the description of the lot given by a single witness.

Much testimony has been taken to show what was, at the time of the grant, known as the "Casa Principal" of the mission. It appears that, immediately adjoining the church, a long building extended along the plaza or Dolores street, which contained the kitchen, the rooms occupied by the priests, and those reserved for guests. Beyond this was a small alley way, and immediately adjoining a building called "Trojé," used as a lumber or store room. North of this was an adobe wall, which formed the front of an inclosure containing several houses, in one of which wool was kept. Another was a mill, and a third a house where soap was made. I cannot exactly determine whether the front wall of the mill came to the street, or whether it was situated in the rear of the inclosure, bounded on the street by the adobe wall. To these buildings succeeded the houses occupied by the escolta or guard. The lot has been surveyed so that its southern boundary is the northern end of the building occupied by the priests, and used for the entertainment of guests. It is contended that it should not extend further than the wall of the mill which has been referred to.

The various buildings above described evidently formed part of the establishment. The labors performed were conducted by Indians, under the supervision of the fathers, and the houses themselves were erected by them, and intended and used for supplying the mission with flour, soap, blankets, etc., necessary to its maintenance. Several witnesses swear that all these houses were included under the general name of "Casa Principal," though that term, probably, in strictness, applied only to the building occupied by the priests. But the testimony is clear and uncontradicted that the lot claimed and occupied by De Haro did not extend further south than the wall of the mill. The officer who, as he swears, gave him judicial possession of the land, fixes its southern boundary at that line, and numerous other witnesses testify that he never claimed the land which lay between the mill and the "Casa Principal," proper. Had this testimony been before the court at the time the decree was made, there could have been no question as to the boundary of the lot.

It is claimed, however, that that boundary has been finally determined by the call in the decree for the "Casa Principal." But it has already been observed that this call was taken from, and merely repeats, the language of the only witness who testified to the location of the lot. As the evidence leaves no doubt as to the true southern line of the premises, we are bound to presume that the witness, by the term "Casa Principal," intended to refer to the whole group of buildings, including the "Trojé," the "Savoneria," and the mill, which some of the witnesses declare were included under that name. We have no reason to suppose that he used the term more accurately than they, especially when we know that, if he intended to state that the lot adjoined the "Casa Principal," proper, he stated what was untrue. The "Casa Principal" of the decree must clearly be taken to be the "Casa Principal" referred to by the witness, and what that must have been, if he intended to testify truly, the evidence of the actual occupation, inclosure, and claim of De Haro discloses.

I think, therefore, that the 100-vara lot, confirmed, should be located as it was granted and occupied by De Haro; that is, bounded on the south by the wall of the old mill, and running 100 varas north along the line of Dolores street.

[NOTE. Subsequently the decree in this case, in so far as it seemed to confirm a 100-vara lot, was annulled, and the grant held as covering only a 50-vara lot. Case No. 14,938. For other of the De Haro grants, see Cases Nos. 14,-939–14,941.]